IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL 1 1 2003

Michael N. Milby
Clerk of Court

CIVIL ACTION NO. B-03-029

JUAN PEQUEÑO,

Appellant

v.

MICHAEL B. SCHMIDT, TRUSTEE

Appellee

Appeal from the United States Bankruptcy Court
for the Southern District of Texas, Brownsville Division

# APPELLANT'S REPLY BRIEF

Respectfully submitted by,

Richard D. Schell
THE FLEURIET SCHELL LAW FIRM LLP
621 E. Tyler
Harlingen, TX 7855
Telephone 956/428-3030
Fax 956/421-433

*ATTORNEYS FOR APPELLANT*

**Table of Contents**

|  | Page |
|---|---|
| REPLY STATEMENT OF FACTS, ARGUMENT AND AUTHORITIES (COMBINED) | 1 |

## REPLY STATEMENT OF FACTS, ARGUMENT AND AUTHORITIES (COMBINED)

### 1. *The Trustee failed to meet its burden of proof to establish that the judgment against the City of Brownsville was not exempt.*

The Trustee does not dispute the starting point in any adjudication of a claimed exemption under 11 U.S.C. § 522; that is, once property is claimed as exempt under one of the applicable categories in Section 522, the property is deemed to be exempt unless an objecting party can prove otherwise. The Trustee concedes that it was his burden to prove by a preponderance of the evidence that the judgment obtained by Mr. Pequeño against the City of Brownsville was not exempt. Specifically, the trustee had to prove that the judgment was not "[a] payment in compensation of loss of future earnings of the debtor ... ." 11 U.S.C. 522(d)(11)(E).

The Trustee points out various matters which he asserts are "credible evidence" establishing that the judgment did not constitute a payment for future lost earnings. This so called evidence consists of statements and/or actions by Mr. Pequeño that would lead one to conclude that Mr. Pequeño did not believe the jury had awarded loss of future earnings. What Mr. Pequeño believed about the verdict is irrelevant. Mr. Pequeño cannot define the nature of the jury's award merely through his beliefs. The Trustee relies upon a statement by Mr. Pequeño that the judgment did not include future lost wages. How does Mr. Pequeño know? The exact nature of the jury award falls within the sole province of the jury itself. Rule

1

606(b) of the Federal Rules of Evidence bars juror testimony regarding methods in deliberation, effects of particular things on the outcome, mindset of any juror or mental processes of any juror. If a juror cannot testify on these issues, how can Mr. Pequeño possibly give credible evidence of what the jury meant when it awarded a lump sum of $400,359.00 in compensatory damages? The Trustee's attempt to prove what the jury meant by proving what Mr. Pequeno believed just does not work.

Moreover, the jury instructions (Exhibit B, Appellee's record excerpts) instruct the jury to consider damages suffered in the future including future earnings. At trial, Mr. Pequeño's economist expert put on evidence of loss of future earnings. Without more, who is to say what portion, if not all, of the jury award was for loss of future earnings. The Trustee's evidence of what Mr. Pequeño said or did is simply not probative of what the jury was actually awarding.

The Trustee relies upon the proffered testimony of Alejandro Garcia, one of Mr. Pequeño's trial lawyers. In this proffer, Mr. Garcia testifies about what Mr. Pequeño told him about what a juror or jurors told him. Presumably the Trustee introduced the testimony of Mr. Garcia in an attempt to prove the truth of what the jurors were saying even though the jurors were not testifying and not in court. Never mind Fed. R. Evid. 606, the proffered testimony from Mr. Garcia was unquestionably hearsay. Any person completing the first year of law school would know that the juror statements referred to by Mr. Garcia are hearsay. However, Mr. Pequeño did not attend law school. How would he know to object to hearsay

2

evidence? Disturbingly, there is no question that the Trustee did know that this evidence was hearsay. Did he think that such evidence could be slipped past his *pro se* opponent?

The Trustee relies upon the case of *Peaches Entertainment Corporation v. Entertainment Repertoire Association, Inc.*, 62 F.3d 690 (5th Cir. 1995) where the Fifth Circuit Court of Appeals states the general rule that when a party fails to object to evidence the appellate court may only review its admission for plain error. The Court goes on to define "plain error" as "error which, when examined in the context of the entire case, is so obvious and substantial that failure to notice and correct it would affect the fairness, integrity, or public reputation [of] judicial proceedings." *Peaches* at 694. Here, the admission of the juror statements as proffered by Mr. Garcia is obvious and substantial error. First of all, why is Mr. Garcia testifying about what his own client told him? Surely whatever statements Mr. Pequeño made to Mr. Garcia were made as privileged attorney-client communications. Secondly, the hearsay juror statements are not admissible under Fed. R. Evid. 606. Thirdly, the mere offering of such infirm evidence against a *pro se* opponent smacks of unfairness. Allowing the hearsay juror statements to stand as the sole evidence of what the jury was awarding would, indeed, taint the integrity of these judicial proceedings.

The bottom line is that every single item of evidence upon which the Trustee relies to meet his burden of proof is either completely irrelevant or fatally defective. The difficulty in devining how a jury reaches a particular verdict is illustrated in *In*

3

*Re Cramer*, 130 BR 193 (Bkr. E.D. Pa. 1991). In this bankruptcy court case, the debtor had obtained a personal injury judgment totaling $58,106.47. The actual jury verdict differentiated between lost earnings damages and other personal injury damages. However the verdict did not differentiate between loss of past earnings and loss of future earnings. The debtor claimed all of the lost earnings damages as exempt under 11 U.S.C. 522(d)(11)(E). A creditor objected to this claim of exemption arguing that a portion of the award must have been for loss of past earnings and therefore could not be exempted. The bankruptcy judge noted that "[t]he first issue which must be resolved is whether the entire fund which debtor seeks to exempt under Section 522(d)(11)(E) can properly be categorized as representing compensation for loss of future earnings ... ." *Cramer* at 194. The Court goes on to discuss various approaches to determining what the jury was actually awarding. Ultimately, the Court decided that any attempt to discern the jury's intent was pure speculation. As such, the Court concluded that "... the fact that we have been reduced to speculation necessarily mandates the conclusion that the [objector] has not met his burden." *Cramer* at 195 quoting *In Re Magnus*, 84 BR 976, 979 (Bkr. E.D. Pa. 1988).

Returning to the case at bar, the Trustee's dilemma is virtually identical to that of the objecting creditor in *Cramer*. What little evidence, if any, that the Trustee has adduced simply does not go past the level of speculation as to the intent of the jury in awarding damages to Mr. Pequeño. Accordingly, the Trustee has not

met his burden of proof and the bankruptcy judge's order disallowing Mr. Pequeño's claim of exemption should be reversed.

## 2. *The Trustee's allegations of bad faith cannot be considered in ruling on a debtor's motion to convert to Chapter 13.*

In his brief, the Trustee argues that a debtor's right to convert from Chapter 7 to Chapter 13 is not absolute, but, rather, the right may be abrogated by a showing of bad faith. This proposition is simply not supportable in view of existing case law. One of the most thorough discussions of a debtor's absolute right to convert is found in *In Re Porras*, 188 BR 375 (Bkr. W.D. TX. 1995). In *Porras*, the debtor originally filed under Chapter 7 of the Bankruptcy Code. The Chapter 7 trustee attempted to examine the debtor pursuant to Bankruptcy Rule 2004. Shortly thereafter, the debtor filed a motion to convert his case to Chapter 11 and also sought to quash the 2004 Examination on the grounds that the trustee was no longer a trustee after conversion to Chapter 11. The bankruptcy judge, Leif M. Clark, converted the case and quashed the 2004 Examination despite allegations by the trustee and a creditor that the debtor was attempting to commit "bankruptcy fraud by failing to disclose significant assets on his bankruptcy schedules." *Porras* at 377. In reaching that conclusion, Judge Clark discusses the substantive and procedural framework for conversion. The Judge observes as follows:

> "Section 706(a) states that a debtor may convert its Chapter 7 case to a case under Chapter 11 at any time, and adds that, upon the presentation of such a request, the court *shall* convert the case. 11 U.S.C. Section 706(a). The bankruptcy rule that implements this statutory

5

>provision adverts that the procedure for conversion requires the presentation of a motion, but adds that such a motion is *not* a contested matter under Rule 9014. Fed. R. BANKR. P. 1017(d). Taken together, the statute and rule confer on the debtor the "absolute right" to convert his or her case to Chapter 11 or Chapter 13."

*Porras* at 377 (emphasis in original).

Judge Clark goes on to note that "the express language of the statute and the legislative history are in complete harmony that the right of conversion is absolute, such that the role of the court is essentially ministerial." *Porras* at 378. Despite a court's concerns about bad faith or abuse of the bankruptcy system, Judge Clark warns as follows:

>"But a court's sense of rectitude cannot be substituted for ignoring the plain meaning of a statute, especially when readily available alternatives are easily at hand to redress any wrongdoing.
>
>Any judge-made exception that operates to place a gloss on statutory language as implacable as that found in Section 706(a) poses a significant danger of judicial legislation."

*Porras* at 378.

Ultimately, *Porras* stands for the proposition that the bankruptcy court cannot take or consider evidence in connection with a motion to convert under 11 U.S.C. Section 706(a). Doing so has the effect of making the motion to convert a contested matter, a result directly contrary from the intent of Bankruptcy Rule 1017(d) which excludes conversion motions from the category of contested matters. Judge Clark's comprehensive and thoughtful analysis in *Porras* is compelling.

6

Applying this analysis to the case at bar, it is clear that the bankruptcy judge erred in denying Mr. Pequeño's motion to convert and that order should be reversed.

### 3. *The Trustee's litany of offenses does not rise to the level of bad faith or "extreme circumstances."*

Assuming arguendo that 11 U.S.C. Section 706(a) allows consideration of evidence regarding bad faith, the Trustee simply did not prove bad faith as he, himself defines it. In the Trustee's brief at page 10, the Trustee states that "to have bad faith there must be some form of deception." A careful review of all of the supposed offenses committed by Mr. Pequeño does not reveal any credible evidence of an intent to deceive.

The Trustee complains about Mr. Pequeño's failure to attend 341 Creditor's Meetings. However, the record before the Court shows that Mr. Pequeño attended two meetings and filed two motions to excuse his personal appearance at 341 Meetings. In these motions, Mr. Pequeño indicated that he could attend such a meeting by telephone or video conference. Such an offer is not made by a person who wishes to deceive or conceal.

The Trustee's chief complaint is that Mr. Pequeño failed to schedule his judgment against the City of Brownsville. Specifically, the Trustee points to Schedule B in which the debtor is supposed to list all personal property that he owned at the time of the Chapter 7 filing. In his brief, the Trustee indicates that the Schedule B was filed on June 17, 2002 and that it did not list the judgment against the City of Brownsville. However, the statement of financial affairs filed by

7

Mr. Pequeño on that same date did disclose the lawsuit against the City of Brownsville. This document also disclosed the receipt of some $60,000 in February, 1999 from a retirement account. Why would a person bent on deception disclose an item in one form and not in another knowing that both forms would be accessible to the Trustee and creditors?

An intent to deceive cannot be inferred from anything that Mr. Pequeño may have done with respect to the filing of schedules, because the Trustee had known about the lawsuit against the City of Brownsville for months. Indeed, by the time that Mr. Pequeño filed the Schedule B that the Trustee so bitterly complains about, the Trustee had already arranged to hire attorney Frank Costilla as special counsel for the Trustee in connection with the lawsuit and judgment. How could Mr. Pequeño hope to deceive the Trustee about the lawsuit, when the Trustee was already openly involved in the lawsuit?

The procedural defects with Mr. Pequeño's bankruptcy case can be attributed to lack of legal training, misapprehension or just plain ignorance. However, there is nothing in the record which would support an inference that Mr. Pequeño intended to deceive the Trustee or his creditors. Accordingly, the bankruptcy judge's finding of bad faith is clearly erroneous, and, assuming that bad faith is even an issue to be considered, the order denying the motion to convert should be reversed.

DATED: _July 11_, 2003.

Respectfully submitted,

*Richard D. Schell* by ERF

Richard D. Schell
Attorney-in-Charge
State Bar No. 17736780
Federal I. D. No. 1221
621 E. Tyler
Harlingen, Texas 78550
(956) 428-3030
(956) 421-4339 (fax)
*rds@fleurietschell.com*

Of Counsel:

**THE FLEURIET SCHELL LAW FIRM LLP**
621 E. Tyler
Harlingen, Texas 78550
(956) 428-3030
(956) 421-4339 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served upon the following in the manner indicated below:

Michael B. Schmidt
John Vardeman
LAW OFFICES OF MICHAEL B. SCHMIDT
555 N. Carancahua, Suite 1550
Corpus Christi, TX 78478
*VIA U.S. Mail*

on this _11_ day of _July_, 2003.

*Richard D. Schell* by ERF

Richard D. Schell