36

United States District Court
Southern District of Texas
ENTERED

APR 0 1 2004

Michael N. Milby, Clerk of Court
By Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## —BROWNSVILLE DIVISION—

JUAN PEQUENO,                  §
    Appellant,              §
                    §
V.                             §          CIVIL NO. B-03-029
                    §
MICHAEL B. SCHMIDT, TRUSTEE    §
    Appellee.               §

# ORDER

This case is an appeal from the Bankruptcy Court's order prohibiting the debtor, Juan

Pequeno (hereinafter "Pequeno" or "debtor"), from converting his Chapter 7 bankruptcy case to one

under Chapter 13. Pequeno filed a motion to convert pursuant to 11 U.S.C. § 706(a), and it was

opposed by Michael B. Schmidt, the Chapter 7 Trustee (hereinafter "Trustee" or "Schmidt"). The

Bankruptcy Court found that the debtor had previously acted in bad faith and, therefore, denied the

conversion motion. The debtor questions on appeal: 1) whether the Bankruptcy Court had the power

to deny his motion to convert; and 2) assuming the Court had such power, whether the debtor's

conduct warranted such a holding.[1] This court holds that, pursuant to 11 U.S.C. § 706(a), Pequeno

had an absolute right to convert; therefore, the Bankruptcy Court did not possess the power to deny

---

[1] Also raised are two points concerning the right of the Trustee to compromise a lawsuit in which Pequeno had prevailed in the District Court and which is being appealed to the Fifth Circuit Court of Appeals. These issues are totally dependent upon the answers to two of the issues described in the text and, as such, need not be ruled upon in this appeal. This court does, however, find it necessary to rule on the characterization of the property, as it is essential to any final resolution of this case.

P:\Law Clerk 2\pequeno final long opinion.wpd

conversion.

## I.    FACTUAL AND PROCEDURAL HISTORY

The factual and procedural background in this case is a little out of the ordinary, primarily because while Pequeno had counsel in his suit against the City of Brownsville ("the City"), he represented himself in the entire bankruptcy proceeding until he reached this court.  The evidence shows that Pequeno filed *pro se* a petition for relief under Chapter 7 of the Bankruptcy Code on December 31, 2001.[2]    According to Pequeno, the reason he filed was because he had no viable income due to losing his job in 1998, and he was facing foreclosure on his home.[3]    Schmidt was appointed Trustee of the bankruptcy estate on January 4, 2002.[4]  Pequeno almost immediately filed a motion to dismiss his Chapter 7 case on January 16, 2002, and Schmidt objected to Pequeno's motion to dismiss on February 14, 2002.[5]    Though a hearing on the matter was scheduled for March 6, 2002, it was continued until April 10, 2002.[6]

Prior to filing bankruptcy, Pequeno had instituted a lawsuit against the City for violating his First Amendment right to free speech.[7]  Schmidt's counsel was notified of Pequeno's

---

[2]  Docket No. 1.

[3]  Appellant Brief at 2; Docket No. 149 at 19.

[4]  Docket No. 4.

[5]  Docket No. 9.

[6]  Schmidt's Response Brief, Exhibit R at 2.

[7]  Pequeno v. City of Brownsville, Cause No. B-00-180 (Southern District of Texas–Brownsville Division), Judge Tagle presiding.  The proceeds of the judgment from this lawsuit constitute one, if not the largest, of the assets of the debtor's estate.

pending lawsuit against the City by the attorney representing the City on February 8, 2002, and subsequently advised Schmidt of same several days later.[8]  A verdict  was entered in favor of Pequeno on February 15, 2002, and on March 26th of that year, he was awarded a judgment in the amount of $400,359—plus $20,385 in attorneys' fees.[9]  On April 5, 2002, Pequeno filed a motion in the District Court requesting the court to amend his judgment to award more damages to compensate him for future loss of income.[10]  The motion was denied.  The City subsequently appealed, and the Fifth Circuit Court of Appeals ordered the parties to the judgment to mediation.[11]

Although Pequeno was required to file his bankruptcy schedules listing all of his assets and debts within fifteen days after filing his Chapter 7 petition on December 31, 2001, he failed to do so.  In March 2002, Schmidt served Pequeno with a subpoena seeking documents from which to determine such assets and debts.[12]  In May, in response to Pequeno's failure to comply, Schmidt filed a motion to compel Pequeno to file his schedules, along with his Statement of Financial Affairs.[13]  In June, the Bankruptcy Court ultimately ordered Pequeno to comply, and he filed these documents on June 17, 2002.[14]  On his schedules, he listed neither the judgment nor the

---

[8] Docket Nos. 9 & 15.

[9] Schmidt's Response Brief, Exhibit A.

[10] Id. at Exhibit D.

[11] Appellant Brief at 4.

[12] Schmidt's Response Brief, Exhibit I.

[13] Docket No. 28.

[14] Docket No. 58.

Q11

$61,000 he had received in February 1999 from a retirement fund after being fired from his place of employment.[15]  Nevertheless, both of these assets were listed on the Statement of Financial Affairs.[16]

With regard to the $61,000, Schmidt claimed that Pequeno produced only one month's bank statement at his oral deposition despite the fact that the applicable subpoena covered all bank records.  Pequeno claimed that he submitted numerous documents at the deposition.  While the record is silent as to exactly what, if any, documents were actually presented, Pequeno filed with this court on September 10, 2003, copies of checks and money orders written between February 1999 and December 1999 that reflected payment of various expenses and copies of his checking account withdrawal receipts showing the balance between these dates.[17]  These documents reflect that his checking account balance on February 15, 1999, was $59,848.42, and in September 1999, the balance was $4,296.32.[18]  According to Pequeno, these copies were forwarded to Schmidt on December 5, 2002.[19]

One of Pequeno's creditors, Aurora Loan Services, Inc. ("Aurora"), filed a motion on March 14, 2002, in the Bankruptcy Court to lift the automatic stay, and a hearing on the matter

_____

[15] Id.  Schmidt misstated in his brief that the value of the fund was $60,000.  Schmidt's Response Brief at 3.

[16] Id.

[17] These documents were assigned Docket No. 33.

[18] Id.

[19] Id.

012

was scheduled for April 10th.[20] A second creditor, Alejandro Tapiero ("Tapiero"), also filed a motion to lift the stay on March 29, 2002, and a hearing concerning same was scheduled for May 8.[21] Both Pequeno and Schmidt failed to appear at the April 10th hearing; however, the attorneys for Aurora and Tapiero were present.[22] The Bankruptcy Court considered Pequeno's motion to dismiss his Chapter 7 case, and both attorneys objected to dismissal based upon Pequeno's judgment against the City. The Court, having questions concerning whether any part of the judgment was for lost future wages and thus exempt from the bankruptcy estate and receiving no answers from either attorneys, orally denied Pequeno's motion to dismiss. The Court, however, granted Aurora's motion to lift the stay.[23]

On April 23, 2002, Pequeno filed a motion to reconsider the lifting of the stay as to Aurora.[24] On May 8, 2002, the hearing was held concerning Tapiero's motion to lift the stay; the Court granted the motion.[25] On May 23, 2002, Pequeno filed a motion to reconsider lifting the stay as to Tapiero.[26] A hearing was held on June 5, 2002, regarding Pequeno's motion to reconsider

---

[20] Schmidt's Response Brief, Exhibit R at 2.

[21] Id. at 2-3.

[22] Though a transcript of this hearing was not included in the record, this court obtained a taped recording of the proceeding.

[23] Debtor's Exhibits, Exhibit IIIC.

[24] Debtor's Exhibits; Exhibit IIID.

[25] Schmidt's Response Brief, Exhibit R at 3.

[26] Id. at 4.

013

lifting the stay as to Aurora, and the Bankruptcy Court agreed to reconsider the motion.[27] The Court set a hearing on the reconsideration of lifting the stay for August 7, 2002.[28] It was at this June hearing that the Court ordered Pequeno to file his bankruptcy schedules by June 17, 2002, and Pequeno mentioned to the Court that he planned to convert his case from a Chapter 7 to a Chapter 13.[29]

On June 14, 2002, Pequeno attended the creditors' meeting and requested an adjournment.[30] Though the meeting was rescheduled for June 28th at his request, Pequeno did not attend, and it was again rescheduled for September 26, 2002.[31] On September 25th, Pequeno filed a motion to excuse his personal appearance and to permit him to appear via telephone or video conference, claiming mechanical difficulties with his car.[32] The Bankruptcy Court denied his motion.[33] Pequeno filed a second motion; the Court again denied it.[34] Pequeno ultimately did not attend the September meeting, and it was rescheduled for October 31, 2002.[35]

On July 18, 2002, Pequeno filed a motion to convert his case to Chapter 13, claiming

---

[27] Docket No. 148.

[28] Id.

[29] Id.

[30] Docket No. 149 at 21.

[31] Id.

[32] Schmidt's Response Brief, Exhibit N.

[33] Docket No. 149 at 21.

[34] Schmidt's Response Brief, Exhibit O.

[35] Docket No. 149 at 21.

014

that he did so in order to save his home from foreclosure.[36] Pequeno asserted that he had originally

filed a Chapter 7 petition because he had lost his job and he was facing foreclosure on his home.[37]

Pequeno maintained that, after referencing a bankruptcy book, he mistakenly believed that filing

Chapter 7 would halt the foreclosure.[38] He claimed that the attorney representing him in the lawsuit

against the City advised him that he should not have a Chapter 7 bankruptcy at that time, as any

judgment in his favor would become property of the estate.[39] Pequeno maintained that, based on that

advice, he moved to dismiss his Chapter 7 case rather than file his schedules.[40] After the Bankruptcy

Court denied his motion, Pequeno began planning to convert his case to Chapter 13 in order to save

his home and ultimately filed the motion on July 18, 2002.[41]

On August 7, 2002, a hearing concerning reconsideration of the lifting of the stay as

to Aurora was held.[42] At the hearing, the Bankruptcy Court was advised that Pequeno had filed a

motion to convert, and the court orally granted the motion.[43] The Court, however, never addressed

---

[36] Schmidt's Response Brief, Exhibit P; Docket No. 149 at 19.

[37] Docket No. 149 at 19.

[38] Id. at 30.

[39] Id.

[40] Docket No. 9.

[41] Schmidt's Response Brief, Exhibit P.

[42] Docket No. 106.

[43] Id.

Q15

the lifting of the stay.[44]  On August 14, 2002, Pequeno's debts were discharged because the automatic discharge was unopposed.

Schmidt filed an objection to Pequeno's conversion attempt on July 22, 2002.[45]  The Bankruptcy Court, after it had already granted Pequeno's motion to convert, scheduled a hearing on the issue to be held on October 9, 2002.  Pequeno filed amended schedules listing the judgment on September 3, 2002, and claimed it was exempt from the estate pursuant to 11 U.S.C. § 522(d)(11)(E).[46]  On September 6, 2002, Schmidt objected to Pequeno's claimed exemption, asserting the monies represented compensation for lost past earnings and mental anguish.[47]  Schmidt also filed an emergency motion for authority to mediate and settle the judgment and a motion to expedite the hearing regarding that motion.[48]

A hearing was held on September 10, 2002, concerning Schmidt's motion for authority to mediate, and the Bankruptcy Court granted the motion.[49]  The Court also scheduled Schmidt's objection to Pequeno's claimed exemption to be heard at the October 9 hearing.[50]

---

[44] Id.

[45] Docket No. 51.

[46] Docket No. 59.  11 U.S.C. § 522(d)(11)(E) permits a debtor to exempt "[a] payment in compensation of loss of future earnings...to the extent reasonably needed for the support of the debtor and any dependent of the debtor."

[47] Docket No. 63.

[48] Schmidt's Response Brief, Exhibit R at 7.

[49] Docket No. 130.

[50] Id.

Pequeno objected and filed a motion to vacate the order, claiming Schmidt did not own the judgment, because it was compensation for lost future wages and thus exempt from the bankruptcy estate.[51]   Subject to the Bankruptcy Court's final ruling on Pequeno's motion to convert, which did not occur until November 7, 2002, the Court permitted Schmidt to move forward with the mediation, which resulted in an agreement to settle the suit for $140,000.[52]   The Bankruptcy Court approved the settlement on September 25, 2002.[53]

At the October 9, 2002 hearing, the Bankruptcy Court heard oral argument concerning Schmidt's objections to Pequeno's motion to convert, Pequeno's claimed exemption, and Pequeno's objection to the mediation and settling of the lawsuit.[54]   On November 7, 2002, the Court denied Pequeno's motion to convert.[55]   The Court also held that the entire judgment against the City was compensation for lost past earnings and mental anguish —not lost future wages—and thus property of the bankruptcy estate and under Schmidt's control.[56]   The Court further ruled that Schmidt had the authority to mediate and settle the judgment.[57]

---

[51]   Appellant Brief at 3.

[52]   Docket No. 130.

[53]   Docket No. 75.

[54]   Docket No. 149.

[55]   Docket No. 150; Schmidt's Response Brief, Exhibit U.

[56]   Docket No. 150; Schmidt's Response Brief, Exhibit V.

[57]   Id.

## II.   STANDARD OF REVIEW

A District Court functions as an appellate court in an appeal of a Bankruptcy Court decision.[58] Accordingly, this court must apply a *de novo* standard to the Bankruptcy Court's conclusions of law and a clearly erroneous standard of review to the Bankruptcy Court's findings of fact.[59]

## III.   DISCUSSION

### A. Motion to Convert

This case presents questions which, compared to many presented to this court, are simple and succinct. They are: 1) does 11 U.S.C. § 706(a) give a debtor an absolute and unfettered right to convert a Chapter 7 bankruptcy case to one under Chapter 13; and 2) if the right to convert is not absolute, do the circumstances in this case warrant the Bankruptcy Court's denial of the motion to convert. Also of importance is the question of whether the primary asset at issue, a $400,000 plus jury verdict, is an exempt asset under 11 U.S.C. § 522(d)(11)(E). As in many instances, however, the answers to seemingly simple questions are not quite so simple. This case is one of those instances. The problem is that both sides are claiming the right to prevail based upon the same Fifth Circuit case. That opinion, In re Martin, 880 F.2d 857 (5th Cir. 1989), not only has the litigants in this case somewhat at odds, but has also generated controversy among many other courts and commentators.

---

[58] See Matter of Haber Oil, 12 F.3d 426, 434 (5th Cir.1994).

[59] Id.

### 1. In re Martin

In Martin, the debtor had attempted to convert from Chapter 7 to Chapter 13.[60] The Bankruptcy Court denied the request for conversion, and the District Court reversed the denial.[61] The issue on appeal in Martin was whether the Bankruptcy Court had erroneously denied the debtor's motion to convert her case.[62] The Fifth Circuit found that the Bankruptcy Court had erred and affirmed the District Court.[63] It is the manner in which it affirmed, or at least the language the Martin Court employed, that is the genesis of the problem faced by courts in the past and the problem with which this court is currently confronted.

The controlling statute under examination in Martin was Section 706(a) of the Bankruptcy Code, which provides that "[t]he debtor may convert a case under this Chapter to a case under Chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1307, or 1208 of this title. Any waiver of the right to convert a case under this section is unenforceable."[64] In supporting its holding that a post-discharge conversion should be permitted, the Fifth Circuit opined that Section 706(a) spoke "in absolute terms" and was "unequivocal in its statement of the right to convert."[65] The Court also reviewed the statute's legislative history and found that it made clear that Congress had intended "to encourage such conversions and to give the

───────────────

[60]  Id. at 858.

[61]  Id.

[62]  Id. at 859.

[63]  Id. at 860.

[64]  11 U.S.C. § 706(a).

[65]  Martin, 880 F.2d at 859.

debtor <u>an absolute one-time right to convert</u>."[66]  The Fifth Circuit further noted that "an exhaustive

review of the legislative history reveals nothing which would indicate that a post-discharge request[67]

to convert should be treated any differently from any other."[68]  Additionally, the court cited <u>In re</u>

<u>Kleber</u>, 81 B.R. 726 (Bankr.N.D.Ga.1987), for the principle that a judge has <u>no discretion</u> to

determine whether a debtor should be allowed to convert and <u>In re Easley</u>, 72 B.R. 98 (Bankr. M.D.

Tenn. 1987), as well as several other cases, for the proposition that a debtor "must be allowed to

convert."[69]

## 2. Post-<u>Martin</u> Decisions

Subsequent to <u>Martin</u>, many courts and commentators have cited the decision as

authority that a request to convert is an absolute right that must be granted.[70]  Additionally, another

Texas Bankruptcy Court has also read <u>Martin</u> as interpreting Section 706(a) to give a debtor an

absolute, non-discretionary right to convert from Chapter 7.    <u>In re Porras</u>, 188 B.R. 375

---

[66]  <u>Id.</u> (emphasis added).

[67]  While Pequeno's request to convert was filed pre-discharge, the motion was not ruled upon until after the discharge had taken effect.

[68]  <u>Martin</u>, 880 F.2d at 859.

[69]  <u>Id.</u>

[70]  <u>See, e.g.</u>, <u>In re Carter</u>, 285 B.R. 61 (Bankr.N.D.Ga.2002); <u>In re Gallagher</u>, 283 B.R. 604 (Bankr.M.D.Fla.2002); <u>In re Lesniak</u>, 208 B.R. 902 (Bankr.N.D.Ill.1997); <u>In re Hauswirth</u>, 242 B.R. 95 (Bankr.N.D.Ga.1999), <u>In re Pakuris</u>, 262 B.R. 330 (Bankr.E.D.Pa.2001), <u>In re Brown</u>, 293 B.R. 865 (Bankr.W.D.Mich.2003); <u>In re Little</u>, 245 B.R. 351 (Bankr.E.D.Mo.2000); <u>see also</u> Schecter, "Does the Debtor have the Absolute Right to Convert a Chapter 7 Case?" 8th <u>Annual Central States Bankruptcy Institute</u> (June 2001), (concluding that "[t]he Fifth Circuit Court of Appeals in <u>Matter of Martin</u>, 880 F.2d 859 (1989) agreed with decisions that the court had no discretion to block the conversion"); <u>4 Bankr Service L. Ed.</u> § 37:171; Norton, <u>Norton Bankruptcy Law and Practice 2d Ed.</u> § 125.7. "Conversion from Chapter 7 or Chapter 11 to Chapter 13."

*020*

(Bankr.W.D.Tex.1995). In <u>Porras</u>, the Court relied on the statutory language of Section 706(a), the legislative history of that provision, and <u>Martin</u> to support holding that <u>even allegations of fraud and/or bad faith could not be used to carve an exception to an absolute statute</u> such as the one in question.[71]

  If the analysis could end here, obviously this court would not have a concern.  The <u>Martin</u> opinion, however, contains conflicting language.  The Court, in writing that a court does not have discretion to block a conversion, noted in a footnote that:

> [t]here are,  however, some cases which block the conversion, but only in extreme circumstances, see <u>In re Calder</u>, 93 B.R. 739, 740 (Bankr. D. Utah 1988) (debtor was a practicing bankruptcy attorney who had filed three Chapter 13 petitions in past seven years, two of which were dismissed on ground of bad faith filing; debtor had also made "minimal effort" during those seven years to repay creditors), or bad faith and an unfeasible plan, see <u>In re</u> <u>Straugh</u>, 41 B.R. 757, 759 (Bankr. W.D. Penn. 1984) (debtor's plan not feasible even using his best estimate of future income; plan also bad faith because it failed to provide for payment of possibly preferential transfer).[72]

In the very next paragraph, the Court holds the right to convert to be absolute, but then again cites <u>Calder</u> as  authority that courts can interfere with that right if exceptional circumstances exist:

> [t]hus, the cases also support our conclusion that a debtor's right to convert under section 706(a) is, as indicated by the statute and its legislative history, an absolute one.  The courts refuse to interfere with that right in the absence of extreme circumstances. <u>Calder</u>, 93 B.R. at 940.  Because Martin does not allege facts which if true would provide an  adequate ground to deny the debtor's motion to convert, we agree with the district court's conclusion that the bankruptcy court erred in denying the conversion.[73]

  The above-quoted language is hard to reconcile.  The Court states that conversion is

---

[71] <u>Id.</u> at 377-80.

[72] <u>Martin</u>, 880 F.2d at  859 n. 2.

[73] <u>Id.</u> at 859.

021

an absolute right, but in the dicta in the next sentence literally suggests that there might be exceptions to that right. Further, the consequence of this inconsistent language is that <u>Martin</u> has been cited by many courts for the proposition that the right to convert a Chapter 7 case to one under Chapter 13 is not absolute and that courts can carve out exceptions.[74] Secondary sources have also cited <u>Martin</u> for the proposition that courts can carve out an exception to the otherwise plain language of Section 706(a).[75]

These courts recognize an exception to conversion for a variety of laudable reasons: 1) the debtor lacked good faith; 2) the debtor was incapable of proposing a confirmable plan; 3) the debtors' control under Chapter 11 or 13 would prejudice other parties or creditors; 4) the debtor abused the bankruptcy process; or 5) conversion would result in a gross inequity.[76] In determining the merits of a conversion motion, these courts have employed myriad factors, including: 1) whether the debtor was represented by an attorney during the bankruptcy proceeding; 2) whether conversion was sought in bad faith; 3) whether the debtor proposed a confirmable plan; 4) the impact on the debtor by denying conversion weighed against the prejudice to creditors caused by allowing the conversion; 5) the effect of conversion on the efficient administration of the bankruptcy estate,

_____

[74] See, e.g., In re Starkey, 179 B.R. 687 (Bankr.N.D.Okla.1995); In re Tardiff, 145 B.R. 357 (Bankr.D.Me.1992); In re Kuntz, 233 B.R. 580 (1st Cir. BAP (Mass.)1999); In re Widdicombe, 269 B.R. 803 (Bankr.W.D.Ark.2001); In re Johnson, 262 B.R. 75 (Bankr.E.D.Ark. 2001); In re Porter, 276 B.R. 32 (Bankr.D.Mass. 2002); In re Jeffrey, 176 B.R. 4 (Bankr.D.Mass.1994); In re Young, 269 B.R. 816 (Bankr.W.D.Mo.2001); In re Thorton, 203 B.R. 648 (Bankr.S.D.Ohio1996); In re Spencer, 137 B.R. 506 (Bankr.N.D.Okla.1992).

[75] See Cochran, Texas Practice Series: Consumer Rights and Remedies (3rd ed.), 28 TXPRAC § 16.9 (citing Martin when describing the right to convert as absolute "only in the absence of 'extreme circumstances'" and being "subject to review by the court for bad faith").

[76] See, e.g., Kuntz, 233 B.R. at 585; Spencer, 137 B.R. at 511; In re Sully, 223 B.R. 582, 584 (Bankr.M.D.Fla.1998).

including the likelihood of reconversion to

Chapter 7; and/or 6) whether conversion would result in further abuse of the bankruptcy system and

thus serve to pervert, rather than implement, congressional policy.[77]  Additionally, when analyzing

whether a debtor was seeking to convert in bad faith, several courts examine the timing of the

conversion filing, the motive for conversion, and whether the debtor deliberately attempted to

conceal assets.[78]

In "bad faith" exception cases, courts have denied conversion where the debtor hid

or fraudulently transferred assets[79] or just generally abused the bankruptcy system.[80]  Other courts

have denied conversion under a "bad faith" label, but have described the issue in terms of whether

the debtor had a confirmable plan,[81] a reasonable chance or actual assets to pay creditors,[82] or was

attempting to avoid all repayment given that a discharge had already been issued.[83]

---

[77] See Pakuris, supra (citing cases that consider these various factors when analyzing a conversion motion).

[78] Id.

[79] Finney v. Smith, 141 B.R. 94 (E.D.Vir.1992) (transfer of assets to girlfriend); Thorton, supra (Bankr.S.D.Ohio1996) (debtor had assets and lied about assets when questioned).

[80] Calder, 93 B.R. at 740 (attorney/debtor filed and dismissed three prior bankruptcy cases and made a false oath precluding discharge); In re Ponzini, 277 B.R. 399 (Bankr.E.D.Ark.2002) (debtor filed Chapter 7 solely to avoid state court discovery, failed to follow court orders, and failed to cooperate with the Trustee).

[81] In re Straugh, 41 B.R. 757 (Bankr.W.D.Penn.1984).

[82] Lesniak, supra; In re McNallen, 197 B.R. 215 (Bankr.E.D.Va.1995).

[83] In re Safley, 132 B.R. 397 (Bankr.E.D.Ark.1991); In re Jones, 111 B.R. 674 (Bankr.E.D.Tenn.1990).

023

A more traditional approach to the bad faith issue applied by courts analyzes the debtor's intent. Indeed, at least one court has looked not only at the subjective intent of the debtor to convert, but also at the debtor's intent in filing the bankruptcy itself.[84] Other courts have just generally ruled that conversion was not available because it would not serve the goals of the bankruptcy system.[85] At least one court, relying on 11 U.S.C. § 105(a),[86] has held that its power to protect the integrity of the court and the bankruptcy system was both inherent and statutory and used that power to deny an attempted conversion.[87]

---

[84] Many courts have looked at the motivation for the conversion. See, e.g., Tardiff, supra (debtor's motivation was to avoid paying creditors); Thorton, supra. One Oklahoma court has even looked at the debtor's pre-bankruptcy conduct to determine his motivation. See Spencer, supra (debtor's problems existed from his own attempts to circumvent his divorce decree).

[85] Pakuris, supra (conversion would interfere with the "prompt" administration of the three-year-old Chapter 7 proceeding with pending settlement proposal); Young, supra (debtor's conversion was an attempt to thwart liquidation provisions of the Bankruptcy Code).

[86] Section 105(a) provides that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a) (West Supp. 1991).

[87] See Calder, 93 B.R. at 740. Not all courts agree with the Calder Court's understanding of Section 105(a). For instance the Court in In re Barbieri noted that:

> [i]n addition, the District Court's reliance on 11 U.S.C. § 105(a) is misplaced. The equitable powers emanating from § 105(a) are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules. In short, although § 105(a) grants a Bankruptcy Court broad powers, it does not authorize the Court to disregard the plain language of § 1307(b).

> We are mindful that the purpose of the bankruptcy code is to afford the honest but unfortunate debtor a fresh start, not to shield those who abuse the bankruptcy process in order to avoid paying their debts. Nevertheless, our concerns about abuse of the bankruptcy system do not license us to redraft the statute.

024

Regardless of the label given or the means used, the courts were all struggling with the same issue: how to treat a request made under a seemingly mandatory statute where the result may be damaging to the bankruptcy system or the creditors in the individual case. This struggle has been characterized by many courts. For example, one court described the dilemma as follows: "[t]his Court respects, and has every intention of enforcing the intent of Congress in all respects. This Court will grant conversion under § 706(a) readily—but not so readily as to allow and condone abuse."[88]

### 3. Application of the Law to the Instant Case

Such was the dilemma faced by the Bankruptcy Court in the present case. The Trustee, concerned about the outcome on appeal of the debtor's case against the City, wished to settle the lawsuit at a sum well under the verdict the debtor received at trial. The proceeds of this lawsuit may represent the only meaningful way that some of the creditors receive any payment—especially should the judgment be reversed on appeal. The debtor, on the other hand, opposes this action and wants to maximize the lawsuit recovery.[89] The Bankruptcy Court, like the courts described above,

---

199 F.3d 616, 620-21 (2nd Cir. 1999) (internal quotations and citations omitted) (analyzing Section 1307(b), which requires that if a debtor at any time moves to dismiss a case that has not previously been converted the court shall dismiss the action, and which is a statute with language similar to that of Section 706(a)).

[88] Starkey, 179 B.R. at 694.

[89] Pequeno is very much in the same position as the debtor in In re Bowman, 181 B.R. 836 (Bankr.D.Mary.1995). The debtor in Bowman had one primary asset: the proceeds from a claim. Id. at 841. The debtor fought against a proposed $500,000 settlement because it left little for her once the creditors were paid. Id. She not only objected to the proposed settlement, but moved to convert the bankruptcy from Chapter 7 to 11. Id. In that case, it was found by the Court that the debtor had failed to disclose the asset until after discharge and waited to file a motion to convert until just after the Trustee filed notice that he might accept the settlement



was also faced with a statute previously described by the Fifth Circuit, and others, as being absolute, while at the same time it had what it believed was a debtor who had acted in bad faith. One can also easily assume, given a review of the record, that the Court knew the trend in other jurisdictions, if indeed one is discernable, is to judicially recognize an exception to the right to convert in situations of bad faith. That being the case, it chose to follow those cases which have permitted courts to create exceptions to Section 706(a).

Nonetheless, this court holds that Pequeno had a right to convert and should have been allowed to convert his Chapter 7 case regardless of the conclusion reached by the Bankruptcy Court. As this court has painstakingly detailed, there are no simple answers in this area, nor any controlling authority which can be read as an absolute road map. However, the Fifth Circuit's opinion in <u>Martin</u>, even considering the reference to exceptions recognized by other courts, should be the best guide. That opinion in at least five different places states that the right to convert is absolute (or uses words to that effect).[90] A statutory right that is absolute cannot have court-made

---

offer. <u>Id.</u> at 842. The <u>Bowman</u> Court granted the motion to convert based upon the language of Section 706(a) despite the conduct of the debtor, which it described as troubling. <u>Id.</u> The Court further held that the debtor in possession could not shift the risk of loss to the creditors while retaining all of the potential benefits for herself. <u>Id.</u> at 844. In other words, she could not "roll the dice" to maximize her chance of recovery and gamble away the creditors' chance of being paid. Ultimately, the Court ordered reconversion back to Chapter 7 because there was no ability for the debtor to reorganize and to avoid the inherent conflict she had between her own self interest and that of the creditors. <u>Id.</u> at 845-46.

[90]The <u>Martin</u> Court writes that:
1.  § 706(a) is "... unequivocal in its statement of the right to convert..." <u>Martin</u>, 880 F.2d. at 858.
2.  "...Congress intended to encourage such conversions and to give the debtor an absolute one-time right to convert." <u>Id</u>. at 859.
3.  "The Courts have broadly construed the right of a debtor to convert and have held that the Court does not have the discretion to block the conversion." <u>Id.</u>
4.  "a debtors right to convert under Section 706(a) is...an absolute one." <u>Id</u>.



exceptions. If that were the case, it would not be an absolute right. Such an interpretation would be the statutory or judicial equivalent of being somewhat pregnant. One is either pregnant or not. A right is either absolute or it is not.

Most instructive is the opinion of Judge Clark in Porras. In that case, as in the present case, a motion to convert was opposed by the Trustee, who cited the dicta contained in the Martin opinion.[91] The Court granted the motion to convert despite the opposition and despite the debtor's failure to disclosure various assets and evasive discovery responses.[92] The Court noted that Martin had ruled that Section 706(a) gave the debtor an absolute right to convert and that both the wording of the statute and the legislative history were in accord that such a right be absolute.[93] In responding to the language in Martin which notes the exceptions recognized by various courts, the Court stated:

> [t]he Fifth Circuit in Martin gives but a nod to the existence of case law support for an exception on the way to noting that no evidence was presented by the trustee of any such "extreme circumstances" in the case *sub judice*. That is hardly the stuff of which a recognized exception is made, especially in view of the strongly stated proposition just a few sentences later in the decision that "[t]he statute itself . . . speaks in absolute terms."[94]

The Court in Porras also looked at the procedural rules specified for handling a Section 706(a) motion to convert and noted that Congress had taken great pains to exclude these conversion motions

---

5.    "The statute itself, as we have noted above, speaks...absolute terms." Id.

[91] Porras, 188 B.R. at 378.

[92] Id. at 380.

[93] Id.

[94] Id. at 378 (emphasis added) (citation omitted).

027

from Bankruptcy Rule 9014, which governs contested motions.[95] This exclusion clearly buoys the conclusion that these motions were intended to be uncontestable matters.

As stated above, numerous courts for many laudable reasons have chosen to engraft their own judicially created exceptions to this otherwise mandatory statute. This court refuses to do so for several reasons. First, the clear language of the statute is phrased in such a way as to give the option to convert to the debtor. Congress created no exceptions (unless the case had been converted previously under sections 1112, 1307, or 1208). Second, the legislative history (as detailed by the Fifth Circuit in Martin and by other courts in many other cases) clearly evidences Congress' intent to make this conversion right mandatory. Third, while acknowledging that other courts from other circuits have chosen to create exceptions, the Fifth Circuit in Martin did not adopt and has not subsequently adopted those decisions. Accordingly, this court—given the clear language of the statute, its unambiguous legislative history, and the pronouncement by the Fifth Circuit in Martin that the right to convert is absolute—does not consider that it is within its province to create a statutory exception where none before existed. Finally, this court's reluctance to so hold is also supported by the fact that it would require one to take a position that is logically inconsistent—i.e., to hold a right is "absolute" except when it is not absolute or, to paraphrase George Orwell, to hold that all rights to convert are absolute, but some are more absolute than others.

This court is sensitive to the need to ensure the integrity of the bankruptcy system. Nevertheless, there are many alternative means for policing the conduct of the lawyers and litigants that are authorized by the rules and statutes. For example, as many courts have pointed out, the case may always be reconverted to Chapter 7, and this reconversion can be because of a debtor's bad

---

[95] Id. at 377 (citing Fed.R.Bankr.P. 1017(d)).

faith.[96] While one might consider it frivolous to convert only to reconvert,[97] such a procedure allows one to comply with both the Congressional mandate of Section 706(a) and the duty to protect the bankruptcy process from abuse.[98]

Additionally, a bankruptcy court always can police the conduct in its court by the sanction provisions that are available in the Code,[99] by referral to the United States Attorney's Office for investigation and/or prosecution under 18 U.S.C.§§ 151-57, by the refusal to grant a discharge, or by the general sanction provisions that are available to prevent misconduct. Additionally, a court could craft protections using its power under Section 105, as long as it does not directly contravene a statute.[100] Indeed, at least one court has concluded that the issues of the debtor's bad faith, abuse of process and any possible costs and damages owed the Chapter 7 Trustee can be resolved in the Chapter 13 proceeding.[101] Accordingly, notwithstanding the reason for the denial and the merits of such a denial, this court holds that the Bankruptcy Court's denial should not have been made and

---

[96] See Little, supra; McNallen, supra ; see also In re Finney, 992 F.2d 43, 45 (4th Cir.1993) ("While Finney's actions do not justify an equitable override of his 'one-time absolute right' to convert the case under § 706(a), they do justify the bankruptcy's court's sua sponte consideration of whether immediate reconversion under § 1112(b) is appropriate."); In re Jennings, 31 B.R. 378 (Bankr.S.D.Ohio 1983); In re Barnes, 275 B.R. 889 (Bankr.E.D.Cal. 2002);

[97] See Thorton, supra.

[98] See Little, supra; McNallen, supra (noting that if this extra-procedural step needs to be eliminated, it needs to be done by Congressional amendment to the statute, not by judicial fiat).

[99] See Fed.R.Bankr.P. 9011(c).

[100] See Finney, 141 B.R. at 98 ( "Although § 105(a) does grant the bankruptcy court general equitable powers to issue necessary and appropriate orders, these powers are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules.") (citation omitted).

[101] Spencer, supra.

hereby grants Pequeno's appeal on this point.

### 4. The Underlying Factual Basis to the Bad Faith Finding

Due to the fact that this court holds that a debtor's right to convert is absolute, it does not reach the issue whether the Bankruptcy Court's factual conclusions are clearly erroneous. Nevertheless, it cannot say that it necessarily would have found the debtor's conduct (especially given the fact that Pequeno was *pro se* for all of the time period in question) to be the kind of exceptional circumstances contemplated by the Fifth Circuit in its brief reference to "exception circumstances" in <u>Martin</u>. The Bankruptcy Court did not file any Findings of Fact or Conclusions of Law, but wrote in its Order that it denied Pequeno's motion to convert upon finding that he "acted in bad faith evidencing an intent to evade Creditors and the Trustee" and that "conversion would prejudice the Creditors."[102]   Evidence of the court's reasoning, however, is found in the transcript of the final hearing held on November 7, 2002, in which the court orally recounted that it denied the conversion motion because Pequeno had failed to timely file his schedules, to attend creditors' meetings, and to disclose the judgment. [103]  Specifically, the Court opined that:

> The law provides—the law encourages the filing of Chapter 13 and in future amendments, perhaps, there will be requirements to file Chapter 13 under certain circumstances. The—however, the law does provide a safeguard in there that the—that conversion is not automatic. Conversion can be—if it's in the best interest of the system and for various reasons, the Court has discretion whether or not to convert a case from Chapter 7 to Chapter 13. In this particular—in this particular case, there have been repeated attempts to have a 341 meeting that have been missed.  While there have been excuses for them, I cannot—I cannot fail to be concerned about the fact that there were four 341 meetings set.  One was passed and three were missed...In addition to that, there were—there were no Schedule filed in this case for six months.  That's another problem that—...that again, while there excuses

---

[102]  <u>Schmidt's Response Brief</u>, Exhibit U.

[103]  <u>Docket No. 150</u> at 38-41.

perhaps have been made for filing the Schedules wrong, it still continues to bring concern to the Court when Schedules are late. In addition to that, there is a significant asset that was not disclosed until after it became apparent it had to be disclosed...This was a lawsuit involving the City of Brownsville that ultimately led to a $400,000 judgment. That's a significant asset. The failure to disclose that could be a violation of criminal law, as well as bankruptcy law and really smacks of bad faith. All of this conduct, taken together, it seems to me it would be—it would be inappropriate under the circumstances for me to convert this case to 13 under the circumstances, especially when we consider what all has gone on. And for all those reasons, I will not convert the case to 13. The lawsuit—in reviewing the lawsuit, it appears perhaps from everything that was presented to me and all I can do is look at the facts that were presented to me, that there was a lawsuit based on the First Amendment...The law is complex in that area...[T]he evidence before me was that there—that there is a possibility of overturning this on appeal...We don't even know whether or not the appeals will be—the case could get—could get thrown out during the appeal procedure and the point being that a settlement after negotiation was reached in the amount of 120,000—$140,000 and under the circumstances with a $400,000 Judgment, a cash payment of $140,000 does to me seem to be appropriate.[104]

Further, though the Court stated in the above-referenced pronouncement and in its written Order that

it found that Pequeno had acted in bad faith, and the Court orally concluded that Pequeno's conduct

was not fraudulent:

> ...[n]ow, again, I am not finding that you have fraudulently done all that. I'm finding that there is sufficient—there are sufficient problems that it does not appear equitable to me to reconvert—to convert this to Chapter 13. It was started as a 7. You chose 7. There 's a lot of harm that can be done to a lot of people by converting this to 13. It may turn out that everybody gets paid off—paid everything if I converted to 13. I mean, but on the other hand, it may turn out that nobody gets anything if I convert his to 13. You may even lose the Judgment. It may be better for the City of Brownsville if I convert this to 13 because then they go on and they win the appeal. I don't know. But based on the evidence before me, I believe it's in the best interest of everyone in this case to leave it where it is....[105]

The Bankruptcy Court's ruling regarding Pequeno's motion to convert highlights one

---

[104] Docket No. 150 at 38-41.

[105] Id. at 49-50.

of the most troubling aspects of the body of cases which allow courts to carve out exceptions to Section 706(a). Though the Bankruptcy Court's ruling is supported by some of the decisions already referenced above, other cases previously mentioned would hold that mere misconduct (short of fraud) was not of such significance as to be an "extreme circumstance" and therefore an exception to Section 706(a). Pequeno was not represented by an attorney during the bankruptcy proceeding.[106] The record also contains some evidence showing that Pequeno did not deliberately attempt to conceal his assets. While the burden is on the debtor to complete his schedules accurately[107] and Pequeno did not disclose the judgment or the retirement funds on the schedules themselves, he did note them on his Statement of Financial Affairs, which he filed simultaneously with his schedules.[108] This court also notes that the Trustee learned of Pequeno's lawsuit against the City in February 2002 from the Trustee's counsel.[109] It is somewhat disingenuous for the Trustee to complain that Pequeno's failure to disclose the judgment resulted in any harm to the creditors when he had knowledge of the asset. Further, the record reveals that, while Pequeno certainly wants to maximize his own recovery from the lawsuit, his initial motive for conversion may have been to save his home

---

[106] See Kuntz, 233 B.R. at 584-85 (acknowledging that a three-month delay in disclosure by the debtor, who was also a lawyer, very well may have been an indication of bad faith, but ultimately finding that the delay was tempered by the fact that the debtor did disclose the asset before the bankruptcy court ordered a discharge and bankruptcy law was not the debtor's area of expertise).

[107] In re Park, 246 B.R. 837, 841-842 (Bankr.E.D.Tex.2000).

[108] Docket No. 58.

[109] Docket Nos. 9 & 51.

032

from foreclosure, not to hide the judgment proceeds from creditors, as Schmidt alleged.[110] Further, Pequeno's assets were disclosed prior to his motion to convert,[111] and the motion was filed <u>before</u> his debts were discharged.[112]

What also gives this court cause for concern is the fact that all of Pequeno's behavior that the Bankruptcy Court cited as the reason for denying conversion—the failure to disclose assets, the failure to timely file his schedules, the missed creditor's meetings—had already occurred when the Court originally granted Pequeno's conversion motion at the August 7th hearing.[113] In March, post-petition, Schmidt served Pequeno with a subpoena seeking documents from which to determine Pequeno's assets and debts.[114] In May, upon Pequeno's failure to comply, Schmidt filed a motion to compel Pequeno to file his schedules and Statement of Financial Affairs.[115] Upon the Bankruptcy

---

[110] <u>Docket No. 149</u> at 19. Pequeno maintained that he filed a Chapter 7 bankruptcy petition because he was unemployed at that time and was thus not eligible for Chapter 13. <u>Id.</u> Consequently, he filed Chapter 7 to stop foreclosure on his home. <u>Id.</u> However, he claimed that, because the lawsuit against the City was pending and he had approximately $30,000 in equity in his home, his attorney representing him in that suit informed him that he should not be in Chapter 7. <u>Id.</u> Consequently, he attempted to dismiss his case on January 16, 2002, before the judgment had been awarded on February 15 and entered on March 26. <u>Id.</u>

[111] <u>Docket No. 58.</u>

[112] <u>See, e.g.</u>, <u>Jeffrey</u>, 176 B.R. at 6 (refusing to allow the debtors, having already received a discharge, to avoid their obligation to surrender their assets for the benefit of their creditors); <u>Pakuris</u>, 262 B.R. at 336 (finding that the timing of the conversion motion—subsequent to the court revoking the discharge after the trustee learned that the debtor had failed to list all of her assets in the bankruptcy proceeding—and the sole motivation being to regain control of the debtor's divorce proceeding demonstrated bad faith).

[113] <u>Docket No. 106.</u>

[114] <u>Schmidt's Response Brief</u>, Exhibit L

[115] <u>Id.</u> at Exhibit J.

033

Court's Order for Pequeno to comply, he filed his schedules on June 17, 2002.[116]   Though Pequeno did attend the first creditors' meeting held on June 14, 2002, he asked for an adjournment, and subsequently did not attend meetings scheduled for June 28th and in September.[117]   Thus, the Bankruptcy Court had full knowledge of Pequeno's actions when he submitted his motion to convert on July 18, 2002.   Faced with this conduct, the Bankruptcy Court nonetheless orally stated at the hearing held on August 7, 2002, that it would convert Pequeno's case to one under Chapter 13.[118]

Subsequent to the Bankruptcy Court's oral ruling, Schmidt filed an objection to Pequeno's motion to convert, and the Court set a hearing for October 9.[119]   Schmidt then filed an emergency motion for authority to mediate and settle the judgment on September 6, 2001.[120]  The Court granted the motion on September 10th.[121]   Schmidt settled the judgment for $140,000, and the Bankruptcy Court approved it on September 25th.[122]   When the Court held a hearing on October 9th to address Schmidt's objection to conversion, among other things, Schmidt presented as evidence of bad faith the same behavior discussed above and of which the Court was already aware when it originally permitted conversion.[123]   The Court then reversed its prior oral pronouncement and denied

---

[116]   Id. at Exhibit L.

[117]   Docket No. 149 at 21.

[118]   Docket No. 106.

[119]   Docket No. 51.

[120]   Schmidt's Response Brief, Exhibit R at 7.

[121]   Docket No. 68.

[122]   Docket No. 75.

[123]   Docket No. 149.

034

Pequeno's request for conversion.[124] Seemingly, the only new factor was the settlement which could provide funds to help pay some of the outstanding sums owed to creditors. This very well may have been the best course of action for most, if not all, of the parties involved in the case, but again the question should be whether it rises to the level of "extreme circumstances."

### B. Pequeno's Claim That The Proceeds From The Lawsuit Are Exempt

A debtor may claim as exempt monies received in remuneration for loss of future earnings. 11 U.S.C. § 522(d)(11)(E). Once the property is claimed to be exempt, there is a presumption that the exemption has been correctly claimed.[125] Therefore any party contesting the exemption has the burden to show that it was improperly claimed. Once the objecting party has satisfied this burden, the debtor must come forward with unequivocal evidence that the exemption is proper.[126] Pequeno attempted to claim that the proceeds from his lawsuit against the City of Brownsville are exempt because they are, in effect, compensation for future earnings pursuant to 11 U.S.C. § 522(d)(11)(E). Schmidt objected and claimed that just the opposite is true—that the lawsuit was not compensation for future earnings, but instead was for past earnings that Pequeno had lost. The Bankruptcy Court held that the judgment was not exempt, and the record clearly supports the Court's decision in that regard.

Following the verdict of over $400,000.00, Pequeno interviewed the jurors who informed him that they made no award for future losses (perhaps wrongfully assuming he would

---

[124] Docket No. 150.

[125] In re Sherk, 918 F.3d 1170, 1173 (5th Cir. 1990).

[126] In re Carter, 182 F.3d 1027, 1029 (9th Cir. 1999).

035

regain his job). After these discussions, Pequeno filed a *pro se* motion with the District Court to increase the judgment in his favor. (Although represented by counsel, Pequeno's lawyers felt that there was no legal basis for filing such a motion and so refused to file it on his behalf.) Pequeno used as his basis for the motion the very facts that he now seeks to deny. Pequeno even went further and wrote the Trustee detailing his conversations with jurors and pleaded with the Trustee not to oppose his motion. This evidence was adduced at the hearing in the Bankruptcy Court without objection.

When a party fails to object, an appellate court reviews the admission of such evidence for plain error.[127] Pequeno has no claim before this court that the admittance of these statements fall into this category. While the jury instructions in the Debtor's underlying case did include instructions on past and future earnings, the verdict was rendered in a lump sum. Consequently, it is arguably impossible to determine solely from that how much, if any, of the money awarded was for future wages. That being said, the best evidence on the topic comes from Pequeno himself. All of his motions and correspondence at the time in question stressed the fact that the jurors had told him no award was made for future lost wages. Having taken that position before the District Court several months earlier, he cannot now take an opposite stance. Schmidt adduced this evidence before the Bankruptcy Court, and Pequeno provided no evidence to the contrary. Schmidt satisfied his burden of proof and rebutted the prevailing presumption in Pequeno's favor.

This Court would go further and hold that Pequeno's conduct and representations in the District Court during the pending of the motion to increase the judgment are clearly judicial

---

[127] Peaches Entertainment Corp. v. Entertainment Repertoire, 62 F.3d 690, 694 (5th Cir. 1995).

admissions of the kind that he cannot now disavow.   Accordingly, this court finds that the Bankruptcy Court correctly found this judgment to be non-exempt.

### C.  The Effect of Discharge

While not raised by the parties in their briefing, a remand of this case will by necessity raise not only the issue of exemption, but also may compel the Bankruptcy Court to address the discharge which went into effect prior to the ruling on the motion to convert. The Fifth Circuit in <u>Martin</u> did not discuss in detail the issue of whether a discharged debtor could move to convert, but it did allow the conversion <u>after</u> the debtor (Martin) had been discharged.  That being the case, this court certainly would not presume to disallow a conversion based upon a prior discharge.   Nevertheless, in its discussion of the right to convert, the Fifth Circuit specifically reserved the question "of what happens to the discharge or the underlying debt when the motion to convert is granted after discharge."[128]   As with most issues in this case, there seems to be little in the way of a general rule.  Some courts have also allowed the conversion regardless of discharge.[129]  Other courts have denied the right to convert based primarily on the legislative intent behind the statute.  For example, the <u>Lesniak</u> Court noted that:

> [t]he sole expressed policy of Section 706(a) in the Legislative history is to give the debtor an opportunity to repay his debts.  Consider how feebly, if at all, that policy would be accomplished in this case.  In <u>In re Spenser</u>, 137 B.R. 506 (Bankr.N.D.OK. 1992), the Court noted that the absolute nature of Section 706(a) ends "[w]here a conversion to Ch. 13 amounts to an attempt to escape debts rather than repay them.[130]

---

[128] <u>Martin</u>, 880 F.2d at 859-60

[129] <u>McNallen, supra</u>.

[130]  <u>Lesniak</u>, 208 B.R. at 905 (citation omitted).

037

Other courts have just practically concluded that "...there is no reason to convert to a Chapter 13 after having received a discharge in Chapter 7 because the debts have been discharged, and therefore there are no longer debts to repay."[131] Indeed courts have denied a conversion to Chapter 13 from Chapter 7 where the apparent purpose—like the admitted purpose in this case—is to regain control of a certain piece of litigation.[132]

   Inasmuch as the Fifth Circuit made no attempt to resolve the question of what happens to the discharge or the underlying debt, it has seemingly left the appropriate course to the sound discretion of the Bankruptcy Court. There are several options which various courts and parties have used to allow the conversion mandated by the Congress while not thwarting the very goal intended by Section 706(a). For example, as stated above the court can reconvert the case back to Chapter 7 to prevent fraud, abuse of the bankruptcy process, or bad faith. Bad faith might include the abuse of creditors or an attempt by the debtor to escape the obligations mandated by the Bankruptcy Code. Further, a creditor or the trustee could move to set aside the discharge under 11 U.S.C. § 727(d) and (e). Additionally, a debtor may move under F.R.Civ.P. 60(b) or Bankruptcy Rule 9024 to set aside the discharge so as to assuage the worries that the court might be entertaining regarding the debtor's good faith or the motive underlying the conversion motion.[133] For instance, the Court in Hauswirth, sua sponte, ruled that the debtor would not be allowed two discharges and allowed the debtor twenty days to file a motion to reconvert her case to Chapter 7 and retain her

---

[131] Id. at 906 (citing Jeffrey, 176 B.R. at 6).

[132] Pakuris, supra; Tardiff, supra

[133] See, e.g., In re Caldwell, 67 B.R. 296 (Bankr.E.D.Tenn. 1986); Jones, supra.

O.38

Chapter 7 discharge.[134]   Otherwise, the court ruled it would vacate the discharge.[135]   Since it is

generally agreed that a debtor is not entitled to two discharges in the same case under two mutually

exclusive chapters[136] and since it is the goal of Congress in enacting Section 706(a) to give debtors

an opportunity to repay creditors, this may be one among many avenues for the Bankruptcy Court

to consider upon remand.  This court, much like the Fifth Circuit, has confidence that the Bankruptcy

Court in this case will fashion a remedy which will satisfy both the needs of the parties and the

mandates of Congress.

   Accordingly, for the reasons stated above, this case is remanded to the Bankruptcy

Court.[137]

   Signed this 31st day of March, 2004.

                Andrew S. Hanen
                United States District Judge

---

[134] Hauswirth, supra.

[135] Id.

[136] Most courts that have considered the issue have concluded that a debtor cannot obtain two discharges in the same case under two mutually exclusive chapters of the Bankruptcy Code. See Jones, supra; Safley, supra; Tardiff, supra; see also In re Kilker, 155 B.R. 201 (Bankr.W.D.Ark.1993); In re Wyciskalla, 156 B.R. 579 (Bankr.S.D.Ill.1993); In re Schwartz, 178 B.R. 340 (Bankr.E.D.N.Y. 1995); Markovich v. Samson, 207 B.R. 909 (9th Cir. BAP 1997).

[137] This court had previously implicitly granted at the Pretrial Conference held last September and hereby explicitly grants the Trustee's unopposed motion for leave to file a response (Docket No. 29) and has taken that brief (Docket No. 30) into consideration in this appeal.